UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

v.

               File No. 1:12-cr-132

               HON. JANET T. NEFF

JULIO HERNANDEZ,

   Defendant.
             /

## **O P I N I O N**

Before the Court is a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, filed by Defendant Julio Hernandez (ECF No. 1752). The Government has filed a response to the motion (ECF No. 1762), and Defendant has filed a reply (ECF No. 1790) along with a supporting affidavit (ECF No. 1787). For the reasons herein, the motion will be denied.

### I. Background

In July 2013, Defendant and other members of a group called the Holland Latin Kings were charged with conspiring to participate in a criminal enterprise. (Fourth Superseding Indictment, ECF No. 480.) In April 2014, the Government filed a superseding felony information charging Defendant with (1) participation in a racketeering conspiracy, 18 U.S.C. § 1962(d), and (2) conspiracy to possess 100 kilograms or more of marijuana with intent to distribute, 18 U.S.C. §§ 846, 841(a). (Superseding Felony Information, ECF No. 1072.)

On April 18, 2014, Defendant signed a plea agreement acknowledging guilt for both counts. (Plea Agreement, ECF No. 1070.) Three days later, he entered his plea before the Court.

At his plea hearing, Defendant acknowledged becoming a member of the Holland Latin Kings (HLK) and assisting that group. (Plea Hr'g Tr., ECF No. 1094.) He was aware that HLK was buying and selling marijuana, and he himself bought and sold marijuana from and to other members of the group. When asked whether he agreed that HLK "as a group sold at least a hundred kilos of marijuana" between 2006 and 2012, he responded, "I can't before – say for certain, but I would imagine so." (*Id.* at 22, 29.)

He also acknowledged that part of the purpose of being a member of the organization was to protect other members. (*Id.* at 26.) On one occasion, in 2008, he got into a fight to protect his brother. (*Id.* at 27.) He was assisted by other members in the fight. (*Id.*)

In the Final Presentence Investigation Report (PIR) (ECF No. 1304), the probation officer scored Defendant with a base offense level of 33 because one of his actions in relation to the conspiracy included an assault with intent to murder. (*Id.*, PageID.18922.) The probation officer recommended an adjusted offense level of 32, after accounting for a reduction due to Defendant's acceptance of responsibility (*id.*, PageID.18924), but Defendant's attorney objected to characterizing the conduct as assault with intent to murder, suggesting that it should be characterized as aggravated assault and scored with a base offense level of 14. (Sentencing Mem., ECF No. 1318, PageID.19247.) Counsel also filed a motion asking for a downward variance to account for Defendant's conduct and role in the conspiracy. (ECF No. 1319.)

The Court sentenced Defendant on September 24, 2014. At the sentencing hearing, the Court denied Defendant's objection regarding the base offense level, finding that there was sufficient evidence of intent to murder. However, the Court granted the request for a downward variance to account for Defendant's role. (S. Hr'g Tr. 38, ECF No. 1355.) Using an adjusted offense level of 30 and a criminal history score of III, the Court determined that Defendant's

recommended range of sentence under the Guidelines was 121 to 151 months. (*Id.* at 40.) The Court sentenced Defendant below the Guidelines to 120 months (10 years) of imprisonment for each offense, to be served concurrently. (J., ECF No. 1330.)

Defendant appealed his sentence, arguing that it was invalid. Among other things, he contended that (1) the Court should not have assigned him a base offense level of 33 under the Sentencing Guidelines, and that (2) his sentence was unreasonable because of his minor role in the overall conspiracy. On May 12, 2016, the Court of Appeals rejected all arguments and affirmed the Court's judgment. *United States v. Penaloza*, 648 F. App'x 508, 535-40 (6th Cir. 2016).

Defendant now raises the following issues in his motion under § 2255:

I. Ineffective Assistance of Counsel . . . [counsel] told me that I would plead out to five years, and not to ten years.

II. Petitioner had a minor role in the Conspiracy for distribut[ing] marijuana, he grew his own marijuana for personal use and [sale], when he ran out he would buy for other member.

III. Amendment 782 . . . The United States Sentencing Commission voted unanimously to reduce sentencing for most federal drug trafficking offe[nd]ers in July 2014 to make this sentencing reduction retroactive effective November 1, 2014[.] The effect of this amendment is to lower the offense level based on drug[] quantities by two levels. Petitioner based offense level for his trafficking conviction, which at the time of sentencing was calculated as level 26, is not after the amendment a level 24.

(2255 Mot., PageID.22256-22260.)

The Government argues that the motion should be denied because the grounds for relief are procedurally defaulted and/or meritless.

## II. Standards

### A. Merits

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court

3

was without jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

### B. Procedural Default

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the defendant shows either (1) "cause" and "actual prejudice" or (2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621-22 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). An ineffective assistance of counsel claim, however, is not subject to the procedural default rule. *Massaro*, 538 U.S. at 504. An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the defendant could have raised the claim on direct appeal. *Id.*

### C. Hearing

The court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). No hearing is required if Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

### III. Analysis

*Ground One:* **Ineffective Assistance of Counsel**

Defendant asserts that he received ineffective assistance of counsel at trial because his attorney told him that he would "plead out" to five years, not ten. (2255 Mot., PageID.22256.) In an affidavit in support of his motion, Defendant avers that his attorney told Defendant (1) that "he would do 5 year sentence[;] do not worry about the sentence Guidelines," (2) that "the Judge will not use the aggravated assault for the attempted murder," and (3) that Defendant "will receive the Minor Role in the Conspiracy." (Def.'s Aff., ECF No. 1787, PageID.22574.) In other words, Defendant claims that his attorney made promises or representations about his sentence that turned out to be incorrect.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic

5

decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Defendant's claim fails because his assertions about what he was told by his attorney are flatly contradicted by the signed plea agreement and by his sworn statements at his plea hearing. Under settled Sixth Circuit authority, a defendant is bound by his statements given under oath at the plea hearing. *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure [under Rule 11 of the Federal Rules of Criminal Procedure], 'the defendant is bound by his statements in response to that court's inquiry.'") (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). Furthermore, "even if counsel gives a defendant erroneous information, a defendant is not entitled to relief if the misinformation is 'directly refuted on the record' by the district judge during a plea

6

colloquy." *Cadavid-Yepes v. United States*, 635 F. App'x 291, 299 (6th Cir. 2016) (quoting *United States v. Todaro*, 982 F.2d 1025, 1029 (6th Cir. 1993)).

Defendant contends that his attorney told him that he would receive a 5-year sentence; however, at his plea hearing, Defendant acknowledged that the charges against him carried a maximum penalty of 40 years in prison, and that, in addition to the minimum and maximum sentencing provisions, the Court was required to consider the sentencing guidelines. (Plea Hr'g Tr. 9-10.) The Court expressly asked Defendant if anyone "threatened you or coerced you or made any promise of leniency or any prediction to you as to exactly what the sentence is that the Court would be imposing in this matter?" and Defendant responded, "No." (*Id.*)

Similarly, the plea agreement informed Defendant that the racketeering conspiracy charge carried a maximum penalty of 20 years and the drug conspiracy charge carried a maximum penalty of 40 years. (Plea Agreement, PageID.11495.) It also informed him that the Court was required to consider the sentencing guidelines before imposing a sentence, and that "the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory minimum and maximum penalties[.]" (*Id.*, PageID.11497.) In other words, even if the Court decided certain factors in Defendant's favor under the Guidelines, the Court was not required to sentence Defendant within the recommended Guideline range.

The plea agreement also emphasized that "no one – not the prosecutor, the defendant's attorney, nor the Court – can make a binding prediction or promise regarding the sentence the defendant will receive." (*Id.*, PageID.11498.) Immediately above Defendant's signature in the plea agreement, the agreement contained the following affirmation:

> I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to

7

> those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. *No promises or inducements have been made to me other than those contained in this agreement.* No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

(Plea Agreement, PageID.11500 (emphasis added).)

The Court cannot reconcile Defendant's sworn statement that no one made any prediction to him about the sentence he would receive with his present assertion that his attorney told him he would receive a five-year sentence. Likewise, the Court cannot reconcile Defendant's sworn statements with his present contention that his attorney promised him that the Court would not count the assault as an assault with intent to murder or would take into account Defendant's minor role in the conspiracy. Both his testimony and the plea agreement make clear that he did not receive any such promises. In addition, the plea agreement expressly informed him that no one could make a binding prediction or promise about the sentence Defendant would receive, and that the Court would have to make a final determination.

Defendant's claim is similar to one raised by the defendant in *Todaro*, who attempted to attack his guilty plea by claiming that his attorney had promised him that he would be sentenced to probation if he pleaded guilty. The Court of Appeals for the Sixth Circuit rejected this claim because the defendant testified at the plea colloquy that no promises had been made to him other than those stated in the plea agreement. *Todaro*, 982 F.2d at 1026. "To allow collateral attacks on guilty pleas to be based upon such claims would make every plea subject to attack and render the oral responses given in court meaningless." *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992). Likewise, to allow Defendant to attack the assistance that he received by counsel on factual grounds that are inconsistent with his sworn statements to the Court would render his statements meaningless.

8

Defendant's claim is further undermined by statements he made at his sentencing hearing. At that hearing, Defendant stated that he was dissatisfied with his counsel's representation because counsel allegedly "convinced [Defendant] that he can . . . make [the Court] see that it wasn't [assault with intent to murder], that he would be able to convince [the Court]." (S. Hr'g Tr. 26.) In other words, contrary to Defendant's present assertion in his motion under § 2255, Defendant's attorney did not make a specific promise about how the Court would construe the assault; instead, Defendant's attorney allegedly overstated his ability to persuade the Court. Defendant's inability to provide a consistent account of his attorney's actions provides an additional reason to discount his self-serving statements in these proceedings.

In short, Defendant's claims about counsel's conduct conflict with the clear representations he made when entering his plea, including his sworn statements to the Court. The Court will not lightly disregard those statements. Thus, Defendant cannot demonstrate the factual basis for his ineffective-assistance claim.

Moreover, Defendant cannot demonstrate prejudice because the plea agreement made clear to him what his maximum sentence could be, and that no prediction could be made about his sentence. Consequently, Defendant was fully cognizant that he might receive a sentence as long as 10 years when he entered his plea. Thus, he cannot demonstrate that he would not have pleaded guilty if not for his attorney's statements. Accordingly, Ground One is meritless.

*Ground Two:* **Minor Role in Marijuana Conspiracy**

Next, Defendant contends that he played a minor role in the conspiracy to distribute marijuana because he purchased or possessed marijuana for his own personal use. Defendant does not provide further explanation of his claim, but he apparently believes that he should have received a further reduction in his offense level under the sentencing guidelines because he played a minor role in the offense.

Defendant does not state a viable claim, for several reasons. To the extent he asserts that his sentence is unreasonable, the Court of Appeals considered this issue and rejected it. *See Penaloza*, 648 F. App'x at 538 ("Given the district court's finding that Hernandez committed an assault with the intent to murder in connection with the underlying conspiracy, we disagree with the contention that Hernandez's role was so obviously minor that a more significant variance was required."). "It is . . . well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *accord Foster v. Chatman*, 136 S. Ct. 1737, 1758 (2016) ("[A]s a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on appeal."). Defendant does not identify any exceptional circumstances that would permit him to relitigate that claim here.

To the extent Defendant argues that the Court improperly applied the guidelines, this claim is procedurally defaulted because Defendant did not raise it on appeal. *See Massaro*, 538 U.S. at 504. In addition, this argument is meritless because it is not cognizable in this action. Absent extraordinary circumstances, claims of non-constitutional error in sentencing may not be raised in a § 2255 proceeding. "Courts have generally declined to collaterally review sentences that fall within the statutory maximum." *United States v. Peterman*, 249 F.3d 458, 462 (6th Cir. 2001). A mistake in application of the advisory sentencing guidelines does not "affect the lawfulness of the [sentence] itself[.]" *Snider v. United States*, 908 F.3d 183, 191 (6th Cir. 2018) (quoting *United States v. Addonizio*, 442 U.S. 178, 187 (1979)); *see Gibbs v. United States*, 655 F.3d 473, 479 (6th Cir. 2011) ("A challenge to the sentencing court's guidelines calculation . . .

only challenges the legal process used to sentence a defendant and does not raise an argument that the defendant is ineligible for the sentence she received.").

"[N]onconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief [under § 2255]. . . . [O]nly the most serious defects in the trial process will merit relief outside of the normal appellate system." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This standard is met only by "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent," such as when there was "a fundamental defect which inherently results in a complete miscarriage of justice[.]" *Hill v. United States*, 368 U.S. 424, 428 (1962) (internal quotation marks and citation omitted). Not "every asserted error of law can be raised on a § 2255 motion." *Davis v. United States*, 417 U.S. 333, 346 (1974).

There are no exceptional circumstances that would justify granting relief in this case. Defendant's sentence falls within the statutory maximum. He does not claim that he is actually innocent or that the Court violated his rights under the Constitution. He simply disagrees with the Court's application of the advisory guidelines. That claim is not cognizable in this action. *See Snider*, 908 F.3d at 191 ("[E]very other court of appeals to have looked at the issue has agreed that a defendant cannot use a § 2255 motion to vindicate non-constitutional challenges to advisory guideline calculations."). Moreover, the Court did take into account Defendant's relatively minor role in the conspiracy compared to his co-defendants, reducing his offense level by two points. (S. Tr. 38, ECF No. 1355.) Thus, Ground Two is both meritless and procedurally defaulted.

***Ground Three:*** **Amendment 782**

Next, Defendant claims that he is entitled to a reduction in his sentence under Amendment 782 of the Guidelines, which took effect on November 1, 2014. Amendment 782

retroactively reduced the applicable guidelines range for certain drug offenses by changing the drug quantity table in the Guidelines.

Defendant's request for a sentence reduction pursuant to a retroactive change in the Guidelines is not properly raised in this action. That sort of request should be brought as a separate motion under 18 U.S.C. § 3582(c)(2), which allows a defendant to file a motion to reduce the term of imprisonment, where the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" through a retroactive amendment to the sentencing guidelines. 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10(a)(1).

Even under § 3582, Defendant's request is meritless. Amendment 782 would not affect the calculation of Defendant's sentence. His offense level was driven by his conviction for participating in a racketeering conspiracy, not by his conviction for the drug conspiracy. The racketeering conviction resulted in a higher offense level than the drug-related conviction. (*See* PIR, ECF No. 1304, PageID.18923.) Under the rules for determining an offense level when there are multiple counts of conviction, the highest offense level controls. *See* U.S.S.G. § 3D1.4. In other words, the drug quantity table did not factor into Defendant's range of sentence. Consequently, his term of imprisonment is not based on a range of sentence that was lowered by Amendment 782. In short, there is no basis upon which the Court could reduce Defendant's sentence under § 3582(c)(2). Accordingly, Ground Three is also meritless.

### IV. Conclusion

For the reasons stated, Defendant's claims are meritless and/or procedurally defaulted. An evidentiary hearing is not required because the record of the case conclusively shows that Defendant is not entitled to relief. Accordingly, his motion under § 2255 will be denied.

Under 28 U.S.C. § 2253(c), the Court must determine whether to issue a certificate of appealability. A certificate should issue if the movant has demonstrated "a substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved of issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Under *Slack*, to warrant a grant of the certificate, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484.

The Court has carefully considered the issues in this matter and finds that reasonable jurists could not find that this Court's dismissal of Defendant's claims was debatable or wrong.

An order will enter consistent with this Opinion.

Dated: January 3, 2019                     /s/ Janet T. Neff
                                           Janet T. Neff
                                           United States District Judge